2 Dec. 623
STATUTE OF LIMITATIONS—EVIDENCE—DAMAGES.

[Lucas County Circuit Court, March 9, 1895.]

Haynes, Scribner and King; JJ.

*ABRAM K. DETWILER, ADMINISTRATOR WITH THE WILL ANNEXED, v. THE CITY OF TOLEDO.

1. WHEN STATUTE COMMENCES TO RUN WHERE INJURY IS NOT CONTINUOUS AND WRONG- DOER IS NOT A TRESPASSER IN FIRST INSTANCE—RIGHT TO RECOVER FOR DAMAGES. ACCRUING SUBSEQUENT TO DEATH OF PARTY INJURED.

D. and the city of Toledo were each the lessees of certain realty under the state of Ohio, and under the terms of their leases were respectively entitled to 1,600 and 1,700 cubic feet of water per minute from the surplus waters of a canal. D.'s right to his 1,600 cubic feet every minute was prior and superior to the city's right to its 1,700 cubic. feet every minute, but the city tapped said canal for its water at a point above D.'s premises and abstracted its water first, thereby at certain times in the year depriving D. of his full 1,600 cubic feet per minute, although during the greater part of each year there was enough water for both parties.

In an action brought by D.'s administrator against the city to recover damages for wrongly depriving the decedent of his full proportion of water—

Held: (1). The city not being a trespasser in the first instance, and the injury to D.'s, rights under his lease not having been continuous, an action lay in favor of D. against the city as soon as the latter took enough water from the canal to deprive D. of his full proportion, and the statute of limitations then commenced to run.

(2.) Plaintiff could not recover against the city for any water wrongfully taken after the death of decedent.

2. COMPETENCY OF QUESTIONS ASSUMING WHAT HAS NOT BEEN PROVED.

It is not error to sustain objections to questions which assume what has not been proved.

3. RIGHT TO RECOVER DAMAGES WHERE PLAINTIFF'S NEGLIGENCE OR WANT OF REASON- ABLE CARE HAS CONDUCED TO SAME.

If, in an action for damages, it appears that the plaintiff, through his negligence or fail- ure to use reasonable care and diligence, has allowed the damage to be unnecessarily increased, he cannot recover for the increased loss which he might have avoided by the performance of his duty.

KING, J.

This is a petition in error to reverse the judgment of the court of common pleas of this county in a case of the same title in that court. Abram K. Det-

---

* The judgment in this case was affirmed by the Supreme Court; unreported, 56 O. S., 772. See also ante, p. 297.

wiler, administrator with the will annexed, brought an action against the city of Toledo, to recover damages, in a large sum ; and he sets forth that Isaac H. Detwiler became possessed of certain property, by a lease from the state of Ohio, the history of which I need not stop to consider further than to state that said lease was transferred, by Augustine Pilliod, on February 24, 1880, to one Robert K. Scott, who in turn transferred the same to Isaac K. Detwiler on the 29th day of March, 1881. Under that lease it is claimed that said Detwiler was entitled to possession of certain lands described therein, and also to the use of 1,600 cubic feet of water per minute, from a canal belonging to the state of Ohio ; and that he had been in possession of that property and in its peaceable enjoyment ; that when he took his lease from Pilliod's grantee it had upon it a mill, which was a valuable structure, which he continued to use thereafter, and says that " on or about the blank day of March, 1884, the city of Toledo, by its board of workhouse, under some claim of title or right to certain premises adjoining those covered by the said lease aforesaid, entered thereon and proceeded to and did tap the said lower level of said canal and took therefrom said surplus water, and has continued so to do ever since ; so that the said Isaac H. Detwiler was deprived of the 1,600 cubic feet of water every minute he was entitled to, under his said contract and lease, and in consequence thereof and for which time his property was rendered practically useless, and but of little, if any value whatever. That the grant to and the rights and privileges and franchises of said Detwiler under his said lease and assignment, were first, prior and superior to those of said city of Toledo."

The city of Toledo answered, and claimed that it was in possession of premises adjoining those of the plaintiff on the west, and that it had acquired its property from the state by lease, and that this lease also provided that it should have and enjoy from said canal 1,700 cubic feet of water per minute for its use, and that it had taken it, having a right to do so.

The case came on for trial, and the record is here before us, setting forth all of the testimony ; and it is claimed that there was error upon the trial in the holdings of the court, upon the admission of testimony, and in its charge to the jury, in these respects :

1. Because the court held that the plaintiff could not recover for any loss or damage to its property occurring more than four years prior to the commencement of this action.

2. That the court erred in holding that the plaintiff could not recover for any loss or damage to its property occurring after the death of Isaac H. Detwiler, which occurred on the 27th of November, 1889, and the period of the four years statute of limitations took effect, under the ruling of the court, at some day in February, 1888—this action having been commenced in the court of common pleas in 1893.

3. That the verdict of the jury is not supported by the evidence in the case.

Those are the three questions ; and under those three heads I think all the objections and exceptions in the record may be classified ; and, as I have but very little time, I will briefly allude to them.

The first question to which I will refer is as to the holding of the court, both as to the admission of testimony upon the trial and its charge to the jury as to the period within which the statute of limitations applied.

It is claimed that this was erroneous, because they claim that this was a continuing injury and the effect continuous, that the plaintiff would have a right to await the time when defendant would cease the commission of the injury.

The 43 Ohio St. was cited as an authority upon this subject ; and it seems to sustain the claim of the plaintiff upon the question which the plaintiff himself raised ; but the holding of the court in the case referred to was, where a party—in that case a railroad company—after causing damage by cutting a new channel, which it controlled, and directing the stream so that it flowed into a new

channel, and so flowing there, flowed against and upon the land of another and caused damage to him—that the railroad company doing those acts was liable for such damage, and if the company so continued to control and direct the stream and if the stream continued to cause those damages the company became liable for the additional damages, and would continue so to become liable until it acquired the right by user to cause such damage, and until such right was acquired by the company, the statute of limitations would not be a bar to the proper recovery of damages. But we do not think that that case applies to this one. Without referring particularly to that, it is sufficient to say upon that point, this case shows that both of these parties were entitled to take this water; no unlawful act was committed by either, as both were entitled to the surplus water above that required for navigation; as provided in their respective leases, each was entitled to that proportion of the water.

Perhaps I should mention at this point, that the plaintiff, Isaac H. Detwiler, brought an action against the city of Toledo to enjoin it from taking its water, and it was finally decided in the case that Isaac H. Detwiler had a right to 1,600 cubic feet of water prior to the right of the city to take its 1,700 cubic feet of water. This then was a contest as between those parties as to who should have the first use of the water in case it was insufficient to supply them both. Now it was in evidence in the case that for a period of perhaps six months in the year the city did not use any water, so that the plaintiff could have all the water that there was, if there was a surplus. For the remaining six months of the year, during a portion of the time there was enough water for the city to use its 1,700 cubic feet and the plaintiff its 1,600 cubic feet per minute; and for only a portion of the season was it claimed that the abstraction by the city of the water was such as to cause damage and injury to the plaintiff. So, the act of the city not being wrongful in the first instance, it not being a trespasser upon the rights of the plaintiff, in the first instance, and the injury not being continuous, we do not think this 43 Ohio St. should control as to the statute of limitations, but think an action would lie in favor of the plaintiff as soon as the injury happened.

This was not a case where a wrong was committed and the injury did not result until a long period afterwards—it resulted immediately, whenever there was not sufficient water, and the city took 1,700 cubic feet of water per minute and that was more than the surplus would allow; that acted at once upon the plaintiff and the damage was caused immediately and the plaintiff had a right to and could and should have brought his action for damages at that time, and we think upon that point the holding of the court of common pleas was proper in the admission of testimony to the jury.

*Second*—In the petition the plaintiff alleged, in very general language, that "On or about the — day of March, 1884, the city of Toledo, by its board of workhouse, under some claim of title or right to certain premises adjoining those covered by the said lease aforesaid, entered thereon and proceeded to and did tap the said lower level of said canal and took therefrom said surplus water and has continued so to do ever since; so that the said Isaac H. Detwiler was deprived of the 1,600 cubic feet of water every minute he was entitled to, under said contract and lease, and in consequence thereof, and for which time his property was rendered practically useless, and but of little, if any, value whatever." Now, that was the only allegation of a wrongful act as committed by the city of Toledo, and it seems to us it could not be construed as having an effect upon anybody except Isaac H. Detwiler. It is a plain statement—that Isaac H. Detwiler had been deprived of this 1,600 cubic feet of water per minute from the time of the commission of this wrong "ever since;" but that would mean as long as he lived —he couldn't have been deprived of it afterwards. Nor could it be broad enough to refer to the acts of the city after his death. We think the court of common pleas was correct in its holding upon that question.

Detwiler v. Toledo (City).

*Third*—I should have said that the claim is made that the court erred in its ruling upon the admission of testimony upon the matter of damages. I only want to refer to a little of the evidence upon that point. The principal exceptions to the ruling of the court upon that subject are found on pages 4, 5 and 6 of the bill of exceptions, and this question was asked one of the witnesses:

Q. Assuming that the mill has four run of stone and a pony, and had that number in 1888, and in fair running condition, taking into account its location and its water power, assuming that it had ample water power to operate those stone, what would be the value of the use of the mill?

That question was objected to "Because the witness had not shown himself qualified to answer; and, second, as immaterial and irrelevant."

And the court said: "I will permit it to be shown as to the value of the use of the mill, that is, rental value."

Then the question was repeated, and it was again objected to, and sustained and plaintiff excepted. Now, I need not say that that question assumes what was not proved in this record—that there was ample water power to operate those stone at all periods of the year; for the record shows that there was not, at some seasons of the year, water power enough to operate the mill, before the city's lease was made. But it seems to us that the action of the court was sufficiently favorable to the plaintiff. Witnesses were called to testify in answer to this question, one after another, and testified that the rental value of the mill was all the way from $3,600 to $4,000, and perhaps $4,500 per year; and therefore, if the claim of the plaintiff was correct—that this was a continuing injury and that he had no use of his mill, the damages would have amounted to $20,000 or $25,000; and yet the mill was worth, according to the testimony, from $5,000 to $6,000, so we cannot say that the court erred in its holding as to the rule of damages to the prejudice of the plaintiff. There might be some doubt whether the rental value was the true rule and whether it was not more than the plaintiff was entitled to recover.

*Fourth*—As to the question upon the weight of the evidence; this is a long record. A great many witnesses were called. A good deal of testimony was offered by both sides. There are witnesses here who testify that this mill was of no value. That about that time when this water was taken away, or when it is claimed that it was taken away, the processes of the manufacture of flour had been so changed that mill stones were no longer of value after coming in competition with mills which were using the roller process; that therefore they had become in some respects valueless.

There was some testimony also bearing upon the question of the promptness with which the plaintiff had acted, and the court instructed the jury as to whether the plaintiff by the use of ordinary care could have avoided the consequences of this injury, and the court charged the jury upon that point as follows:

It was the duty of Isaac H. Detwiler, during this period of which his representative complains, to use reasonable care to avoid the injury or to lessen and reduce the damages. That duty is not arbitrarily imposed, but it is only when, in view of all the circumstances of the case it was a reasonable duty which ought to have been performed instead of passively allowing a greater damage. Now, if through his negligence or failure to use reasonable care and diligence he allowed the damage to be unnecessarily increased, then there can be no recovery for the increased loss which might have been avoided by the performance of his duty.

There is considerable more, but I do not need to read it. Now, one consideration that might have had weight with the jury, although nothing particular was said in the charge of the court, was that on the 9th day of August, 1884, plaintiff filed his petition against the city alleging that this taking of the water was a wrongful taking; that he was entitled to 1,600 cubic feet per minute, and asked that the city be enjoined, first temporarily and then perpetually from drawing off water from said level. On the same day a temporary injunction was allowed upon the prayer of that petition, and that injunction remained in force, without

any attempt to dissolve it, at that time, except to file a motion. An answer was filed on the 30th of August, and a reply on the fifth of September, joining issue. So that within a month the issue was joined with the plaintiff and the case remained pending in the court of common pleas until the 6th of October, 1887, without any further action, when it was tried and the injunction dissolved upon that day by the final judgment in the case. The plaintiff gave notice of his intention to appeal, and did appeal to this court, which revived the injunction until it should be here tried. Here the case was pending without any further action on the part of any party to the case, so far as appears upon the record, except that on March 20, 1890, it was suggested that Isaac H. Detwiler had died, not being able to outlive his lawsuit, and the case was tried then in the circuit court and a decree making the injunction perpetual was had. Here was this injunction pending all this time. If the plaintiff claimed anything, why did he not insist upon having his injunction enforced? He had an absolute remedy which the court would have enforced if he had asked it. Yet he paid no attention to that, until the court finally decided, seven years after the case was commenced, that the equities were with the plaintiff; that the plaintiff was entitled to an injunction and then this action was commenced for damages. That is a matter which might have had weight with the jury; whether the plaintiff had exercised that degree of diligence and care which he ought to have exercised to prevent this injury. It seems to us that it would be hardly just for the plaintiff to let a lawsuit stand for seven years—and so far as it appears, nothing was done to bring it to trial, and it was pending in this court four years and over before it was tried—and then come in and ask the court to allow him damages for the use of his property, of three or four thousand dollars a year, because it was lying idle during all that time. It was suggested that he had a right to await the determination of his rights by this court. But if rights are to be determined, the rule is directly the other way; a court of law is the place to determine his rights. Many cases may be cited where injunctions have been refused for the reason that the legal rights of the parties have not been ascertained; and after an action for damages has been tried by the court and a jury and damages are recovered, then possibly the court will allow an injunction. And he also in bringing his action for damages might have asked for an injunction. All of these remedies were open to the plaintiff in the courts, none of which he saw fit to take, but chose to await the decision of his injunction case in the courts.

It seems to us from a review of all this testimony, conflicting as it is, that as to the issues submitted to the jury whether the plaintiff was entitled to recover damages for this period of about twenty-one months (during which time it was held that he might have recovered, if he had sustained damages), that the verdict of the jury ought not to be disturbed, and we therefore affirm the judgment.

*J. H. Tyler*, Attorney for Defendant in Error.